**Booker T. WASHINGTON**

v.

**John J. RAFFERTY, Warden, Rahway State Prison Irwin I. Kimmelman, Attorney General of New Jersey, Appellants.**

No. 86–5116.

United States Court of Appeals, Third Circuit.

Submitted Pursuant To Third Circuit Rule 12(6) June 22, 1987.

Decided Sept. 30, 1987.

Rehearing and Rehearing En Banc Denied Oct. 28, 1987.

W. Cary Edwards, Atty. Gen. of N.J., Richard J. Hughes Justice Complex, Gilbert G. Miller, Deputy Atty. Gen., Div. of Criminal Justice, Appellate Section, Trenton, N.J., for appellants.

Richard Coughlin, Asst. Federal Public Defender, Dist. of N.J., Camden, N.J., for appellee.

Before WEIS, BECKER and MARIS, Circuit Judges.

### OPINION OF THE COURT

WEIS, Circuit Judge.

Finding that the state failed to abide by the terms of a plea bargain, the district court granted a writ of habeas corpus. The issue before us is whether the prosecutor had agreed that he would not make a recommendation on sentencing to the trial court. We conclude that inconsistencies between a written agreement signed by

defendant and the prosecutor's oral representation at entry of the plea were resolved by the trial judge's explanation during the guilty plea colloquy. For that reason, we find no breach of the plea bargain and will vacate the order granting the writ.

Petitioner is a state prisoner who negotiated a plea bargain on charges arising from the stabbing death of Elbert Watson. On May 20, 1980, as a prelude to the entry of his guilty plea, defendant and his lawyer, an assistant public defender, both signed a form prepared by the Superior Court of New Jersey. The form provided spaces for listing the number of counts of the indictment, nature of the offense, maximum penalties, and terms of any plea bargain. The form contained printed instructions to "write out the specific sentence recommendation you were promised [by the prosecution]." In the space following this instruction was handwritten "prosecutor waives request for extended term (possible life sentence); maximum to be faced is 30 years with possible 15 year minimum. Prosecutor reserves right to speak at sentencing."

The next day, May 21, 1980, defendant and his counsel appeared before a state trial judge to enter a guilty plea in accordance with the bargain. The prosecutor opened the proceedings by stating the terms of the plea agreement. In return for a plea of guilty to one count, "the State would make no recommendation as to sentencing [on that conviction], other than the State would waive its right to ask for an extended term at the time of sentencing, but the State would reserve its right to comment at the time of sentencing." In addition, the state would seek dismissal of the second count.

The public defender replied that "the Prosecutor has accurately portrayed to the court the nature and substance of our plea agreement. I filled out the Statement by Defendant with Mr. Washington this morning and [have] gone over it with him.... I'm satisfied that he understands the nature and substance of the plea agreement."

The trial court then engaged in a lengthy colloquy with defendant, discussing his signed statement, his understanding of the questions, his narration of the details of the crime and his relationship with the victim. The judge also reviewed a statement by an eyewitness and, finally, questioned defendant about his waiver of the right to trial. After this extensive dialogue on the record, the trial judge said:

"Your attorney advises me that she has made an agreement with the Prosecutor that in return for your guilty plea to the first count of this indictment, which charges murder, the Prosecutor is going to ask the Court to dismiss the second count.... The prosecutor is going to waive his right to move before the Court for an extended term of imprisonment for you, and is going to make no recommendation today with respect to what your sentence should be, but he has reserved the right to speak at the time of your sentence and to make a recommendation to the court at that time with respect to what your sentence should be. Do you understand all that?"

Defendant replied, "Yes, sir."

The judge continued, "And do you understand, that under the terms of that agreement, the Court could sentence you to as much as thirty years in prison for this offense?" Defendant responded, "Yes, I do, Your Honor."

Two weeks later, the prosecutor sent a letter to the trial judge outlining the details of the crime and the defendant's previous criminal record. The prosecutor closed by asking the court to impose a thirty-year sentence with a parole minimum of fifteen years. A copy sent to defense counsel sparked a four-page reply on July 11, 1980, pointing out various mitigating circumstances, including provocation. The letter concluded with an assertion that a term of years substantially less than "the maximum term available" would be a just sentence.

The defense attorney's letter to the judge made no reference to any agreement by the state to withhold a recommendation on sentence, nor did she object to the prosecutor's letter on that basis. A copy of the

letter was sent to defendant as well as to the prosecutor.

The trial judge also received a letter from defendant himself which recited that he had agreed to submit a plea of guilty in keeping with a negotiated agreement

"which stipulated that the sentencing would be exclusively reserved for your discretion.

And that there would not be any arguments presented in efforts to persuade or influence your decision prior to sentencing.

However, it is my understanding that the Prosecutor has thus far violated that particular clause in our agreement by already presenting biased information endeavoring to make his recommendations for sentencing all the more appealing, which is strictly out of accordance with our previous negotiations."

He then asked for "the fullest" consideration.

The sentencing hearing took place on July 17, 1980. The judge acknowledged that he had received the three letters, and then heard argument. The prosecutor stated that he had "at the time of the plea reserved the right to comment at this time as to what the appropriate sentence should be." He then described the murder and discussed the defendant's record.

Defense counsel spoke at some length, emphasizing mitigating circumstances and taking issue with several points raised by the state. She did not object to the prosecution's action in making a recommendation at that time, nor did she suggest that the recommendation was contrary to the terms of the plea bargain. After allowing defendant an opportunity to speak, the judge imposed a sentence of thirty years with a ten-year parole minimum.

Defendant appealed to the New Jersey Superior Court Appellate Division asserting, among other grounds, that the prosecution's letter to the court before sentencing violated the plea agreement. The appellate court observed that the trial judge had stated on entry of the plea that the prosecution could comment on the sentence. Moreover, defense counsel did not argue otherwise when the prosecutor wrote to the court or when sentence was imposed. The judgment of the trial court was affirmed. The state supreme court denied certification.

Defendant filed a petition for a writ of habeas corpus in the district court. After a careful review of the record, the district judge determined that the state prosecutor had breached the plea bargain and that petitioner was entitled to relief. The court found that the state had agreed "to 'make no recommendation as to sentencing,' other than to waive its right to an extended term, but reserved the 'right to comment at the time of sentencing.'" As the district judge saw it, the plea agreement explicitly forbade the prosecutor to make any sentencing recommendation.

The district court also concluded that the state judge's restatement of the plea bargain did not relieve the state of compliance with the terms as the prosecutor had represented them at the beginning of the plea colloquy. The court observed, moreover, that petitioner had objected to the prosecutor's recommendation in his letter to the state judge before sentencing. Accordingly, the district court granted the writ and remanded the matter to the state court to strike the plea or to order specific performance of the bargain. A stay was granted pending disposition of the case by this court.

On appeal, the state contends that the district court failed to apply the presumption of correctness to the state court findings that the prosecutor had not agreed to forego a sentence recommendation. The state argues that the district court also erred in resolving an ambiguity in the agreement in the defendant's favor rather than applying an objective standard.

*Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971), observed that when a plea rests "in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement," the promise must be fulfilled. Because the prosecution in that case breached its prom-

ise not to make a sentence recommendation, the Court granted habeas corpus relief.

In *United States v. Crusco,* 536 F.2d 21, 23 (3d Cir.1976), the prosecutor had agreed to "take no position on sentencing." At the time of sentencing, the United States attorney responded to the defendant's plea for leniency by commenting on the defendant's bad character without, however, requesting a specific sentence. *See id.* at 25. This court construed the prosecutor's comments "as a transparent effort to influence the severity of [the defendant's] sentence" and granted the petition for withdrawal of the plea. *See id.* at 26–27.

In *United States v. Miller,* 565 F.2d 1273 (3d Cir.1977), *cert: denied,* 436 U.S. 959, 98 S.Ct. 3076, 57 L.Ed.2d 1125 (1978), we emphasized that *Crusco* should not be interpreted expansively. In *Miller* the prosecutor had agreed to make no sentencing recommendation but reserved the right to comment on the defendant's cooperation. At sentencing, in addition to addressing the defendant's cooperation, the prosecutor adverted to counsel's attempts to excuse the defendant's criminal conduct. This court held that no breach of the agreement had occurred—"the government will be held only to what it has promised." The prosecution had specifically agreed "only not to make recommendation as to the sentence." It had not promised to waive any attempt to influence the sentence. *See id.* at 1275.

In both *Crusco* and *Miller* this court urged caution and semantic specificity in arriving at the terms of a plea bargain. In *United States v. Ligori,* 658 F.2d 130, 132 (3d Cir.1981), we stressed the "clear import of the Government's promise, objectively assessed." There, the government's pledge to make no recommendation on sentence did not apply to a Rule 35 proceeding adjudicating a motion to reduce the period of incarceration.

In *United States v. Swinehart,* 614 F.2d 853 (3d Cir.), *cert. denied,* 449 U.S. 827, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980), we remanded so that the district court could ascertain the intent of the parties to a plea bargain. In that case, the defendant alleged that the government had changed the terms of the bargain by requiring him to "pass" a lie detector test rather than merely to "take" it as specified in the written agreement.

The prosecution in *Patrick v. Camden County Prosecutor,* 630 F.2d 206, 207 (3d Cir.1980), agreed to make no recommendations as to the sentence but reserved the right to "comment and make remarks appropriate ... to the magnitude of the sentence imposed." Nevertheless, at sentencing, the prosecutor argued that the defendant "should receive the maximum penalty dictated by law," a statement this court held violated the plea bargain.

In most of the cited cases the question was whether the prosecutor's comments, viewed objectively, complied with the terms of the plea agreement. In the case at hand, the issue, more precisely, is: what in fact were the terms of the plea agreement? The state appellate court failed to resolve that issue, one not squarely raised in the state trial court.

Although the defendant's communication to the state judge before sentencing objected to the prosecutor's letter, it did not specifically deny the state's right to submit a recommendation, but focused on "biased information." [1] Interestingly, though, the defendant's letter referred to the agreement of "May 20", the date defendant signed the statement that had been filed with the court clerk the day before the plea colloquy. Presumably defendant was alluding to the statement that he had signed, a copy of which he may have retained.

Three variations of the plea bargain can be discerned from the record. The first is the written statement of May 20 that defendant and his attorney signed in which blanks were completed. In this version the prosecutor waived the right to request a possible life sentence, agreed to a maxi-

---

1. In *United States v. Baylin,* 696 F.2d 1030 (3d Cir.1982), this court held that the defendant's failure to object to a presentence investigation report did not waive his claim that the prosecu- tion had violated a plea bargain. We treat the defendant's letter to the state judge as marginally adequate to assert an objection to the prosecutor's comments.

mum term of thirty years with fifteen-year minimum before parole, and stipulated that "prosecutor reserves right to speak at sentencing." It is crucial that this agreement—the only one reduced to writing—contains no prohibition against the state recommending a sentence. See the description of a similar proceeding in *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 371, 88 L.Ed.2d 203 (1985) (White, J., concurring).

When the prosecutor opened the plea colloquy the following day, he stated that under the agreement "the State would make no recommendation as to sentencing" other than to waive the life term, but would "reserve its right to comment at the time of sentencing." This second version diverges somewhat from the written statement and is fairly ambiguous.

The record does not reveal whether the trial judge noticed the discrepancies between the two versions or whether he simply wished to make sure that defendant comprehended the consequences of the plea bargain. In any event, the judge explicitly stated to defendant that the prosecutor "is going to make no recommendation today with respect to what your sentence should be, but he has reserved the right to speak at the time of your sentence and to make a recommendation to the Court at that time with respect to what your sentence should be." Defendant personally acknowledged that he understood, and his counsel did not take exception to the court's explanation of the prosecutor's commitment. Obviously this third version of the prosecutor's promise is consistent with the statement defendant signed and differs to some extent with the prosecutor's oral comments at the beginning of the colloquy.

The variations between the written statement, which did not bar the prosecutor from proposing a sentence, and the prosecutor's representation that he would not make a recommendation presented an ambiguity requiring clarification. That uncertainty was resolved by the trial judge's explanation, which the defendant personally affirmed and to which his attorney did not dissent. At that point in the proceedings, the bargain was clearly set forth and left no room for doubt.

We therefore determine that the ultimate agreement permitted the prosecutor to recommend a sentence. Consequently, the record does not support the district court's conclusion that the state had violated the plea agreement. Accordingly, the order of the district court will be vacated and the case will be remanded for the entry of an order denying the writ of habeas corpus.